UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
MARC BONNANT,

                Plaintiff,

    -against-

MERRILL, LYNCH, PIERCE, FENNER & SMITH, INC.
and MERRILL LYNCH CAPITAL SERVICES, INC.,

                Defendants.
------------------------------------------------------------------------X

Case No.

09-cv-3007 (RJS)

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S FRCP 62.1 MOTION FOR AN INDICATIVE RULING TO VACATE THE ORDER OF SUMMARY JUDGMENT PURSUANT TO FRCP 60(B)

# David J. Hoffman
## Attorney at Law
One Whitehall Street
Suite 1825
New York, New York 10004
Tel: (917) 701-3117
E-Mail: djhoffman@djhoffmanlaw.com

## I.   This Court may Consider Mr. Bonnant's Motion Under FRCP 62.1

This Court may consider this motion under FRCP 62.1, which provides that during the pendency of the appeal, the Court may: (1) defer decision of the motion, (2) deny the motion, or (3) issue an indicative ruling which will be followed by a motion for remand to the circuit court.  Jock v. Sterling Jewelers, Inc., 2010 U.S. Dist. LEXIS 48257, *4 (S.D.N.Y. May 11, 2010)(where 60(b) motion was contemplated, "[a]lthough the requested relief is unavailable while Sterling's appeal is pending, the Court may nonetheless consider the motion and make an indicative ruling pursuant to Federal Rule of Civil Procedure 62.1.")  Mr. Bonnant seeks vacatur (or modification) under FRCP 60(b)(2) and FRCP 60(b)(3).

## II.   In Light of New Evidence the Court Should Vacate or Modify the Judgment

Newly revealed evidence compels the Court to vacate or modify its summary judgment order as provided for in FRCP 60(b)(2) and FRCP 60(b)(3). Recently submitted sworn declarations and Merrill Lynch documents reveal that the judgment was obtained by false information that Merrill Lynch submitted to the Court.

### A.   Merrill Lynch Knew that Mr. Bonnant was not the Beneficial Owner of Sophin

New information shows conclusively that Merrill Lynch did not believe that Mr. Bonnant was the owner of the Sophin Account. Recently, in the FINRA arbitration, Ezequiel Nasser has submitted his own declaration, the declaration of Claudia Srour Buch, and documentation that show that Merrill Lynch misrepresented the state of its own knowledge with respect to the Sophin account. As the the judgment was grounded on Merrill Lynch's clearly erroneous statement to the Court, Mr. Bonnant moves for

1

modification or vacatur of the judgment in this matter under FRCP 60(b)(2).

Under Rule 60(b)(2), "the court may relieve a party or its legal representative from a final judgment, order, or proceeding" when "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)". In order to successfully bring a Rule 60(b)(2) motion, "the movant must demonstrate that (1) the newly discovered evidence was of facts that existed at the time of the... dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching." U.S. v. Intl. Brotherhood of Teamsters, 247 F.3d 370, 391 (2nd Cir. 2001); Sea Trade Co. Ltd. v. Fleetboston Financial Corp., 2009 U.S. Dist. LEXIS 114888 at **21-22 (SDNY 2009); see also Insurance Co. of North America v. INA Reinsurance Co., 609 F.3d 122, 131 (2nd Cir. 2010)("the movant must present evidence that is truly newly discovered or . . . could not have been found by due diligence"). Where "questions exist as to [what extent] of the judgment is based on mistakes or omissions", it is appropriate to vacate a judgment under FRCP 60(b). Philips Lighting Co. v. Schneider, 2010 U.S. App. LEXIS 21033 at **6-7 (2nd Cir. 2010).

Mr. Nasser's submission demonstrates conclusively that Merrill Lynch repeatedly made false statements to this Court. In a submission dated October 1, 2010, in the FINRA Arbitration proceeding, Mr. Nasser submitted documents containing both his own declaration and that of Ms. Srour to the arbitration panel. Hoffman Decl. Ex. 1, Submission of Ezequiel Nasser, dated October 1, 2010.  Mr. Nasser has taken the position that he is "the primary beneficiary... of Sophin" and that "my sister, Camelia [de Kassin], is the primary beneficiary of... Artonis." Hoffman Decl. Ex.2, Declaration of Ezequiel

2

Nasser dated October 1, 2010, p. 2. Essentially, Mr. Nasser is trying to get control of the claims made by Sophin in the FINRA arbitration.

The key document that Mr. Nasser has advanced in support of his motion is the declaration of Claudia Srour Buch. Ms. Srour was "the financial advisor responsible for handling Merrill Lynch accounts for Sophin... and Artonis... and Opalgreen". Hoffman Decl. Ex. 3, Declaration of Claudia Srour dated October 1, 2010 ("Srour Decl."), p. 1. As Merrill Lynch's former "top producer" in South America, Ms. Srour stated that "Camelia Kassin... had a personal account... that was linked to the Artonis account... with Merrill Lynch." Id. Whenever the balance of the "Kassin Personal Account" fell below $20,000, Ms. Srour transferred funds from Artonis into the personal account. Id. Furthermore, "[o]n several occasions, [Ms. Srour] had phone conversations with Camelia or Raphael Kassin concerning the Kassin Personal Account with Merrill Lynch and their debit cards." Id. Ms. Srour also provided more than two dozen authorization forms instructing Merrill Lynch to make the transfers from the Artonis account into the Kassin Personal Account, each clearly bearing the name "Camelia N. Kassin", sent between November 21, 2002 and June 2, 2005. Hoffman Decl. Ex. 4, (excerpted from Ex. I to Srour Decl.)  Those forms clearly show that they were originally intended to be made from the Sophin account.

While Mr. Bonnant is confident that the dispute as to the ultimate beneficial ownership of Sophin will be resolved in Mrs. de Kassin's favor, that dispute has revealed that Merrill Lynch misrepresented its own knowledge and information concerning what Merrill Lynch has mendaciously referred to as the "Bonnant Accounts". Merrill Lynch stated repeatedly that it believed only Mr. Bonnant was associated with Sophin, Artonis, and Opalgreen. Clearly, Ms. Srour knew otherwise.

3

Merrill Lynch documents support Ms. Srour's sworn statement. The "standing LOA" shows that Mrs. de Kassin was the transferee of cash from Merrill Lynch accounts. Srour Decl., Ex. I. Crucially, this document shows that the transfers were initially intended to come from Sophin, but ultimately derived from Artonis. Id. In their submissions, Merrill Lynch expounded upon such transfers, i.e., the transfers among the so-called "Bonnant Accounts", yet chose to conceal this key document which shows the connection of Ms. de Kassin to Sophin.

That Ms. Srour's knowledge is imputed to Merrill Lynch is beyond cavil. "The general rule is that knowledge acquired by an agent acting within the scope of his agency is imputed to the principal and the latter is bound by such knowledge although the information is never actually communicated to it." Center v. Hampton Affiliates, Inc., 66 N.Y.2d 782, 784 (1985); see generally 3 Fletcher Cyc. Corp. § 806.10 (2008)("It is a well-established rule that the knowledge of an officer or agent of a bank is knowledge of the bank which the officer or agent represents in a transaction performed by the officer or agent within the scope of his or her authority."). Ms. Srour's declaration shows incontrovertibly that Merrill Lynch knew from the outset that Mr. Bonnant was not the true beneficial owner of Sophin.

### B.     Merrill Lynch's Case Rested on the False Assertion that Mr. Bonnant was the Beneficial Owner of Sophin

Central to Merrill Lynch's motion for summary judgment was its assertion that Mr. Bonnant was "the only person that Merrill Lynch knew of in connection with the Sophin Account." Defendants' Statement of Undisputed Material Facts dated July 27, 2009, p. 9. This representation undergirded both of Merrill Lynch's main arguments: (1) that the "two signatures" bound Mr. Bonnant under the arbitration clause of the

4

International Cash Management Account (ICMA) agreement and (2) that Mr. Bonnant misrepresented himself to Merrill Lynch as the sole shareholder of Sophin.

During oral argument, Merrill Lynch directly stated that the significance of the two signatures on the ICMA agreement depended on the assertion, now proven false, that Merrill Lynch believed Mr. Bonnant to be the beneficial owner of Sophin. The Court specifically asked Merrill Lynch's counsel, "So is there an ambiguity between page 4, which has signatures of both Mr. Bonnant in a corporate capacity and Mr. Bonnant as what appears to be an account holder, and [only Sophin's name appearing] on page 1?" Transcript of Proceedings held before the Honorable Richard J. Sullivan on May 11, 2010, p. 8. Counsel responded, "There's no ambiguity whatsoever" because Sophin was "just a company that's organized to hold... an [Mr. Bonnant's] assets" and that therefore Merrill Lynch considered Mr. Bonnant and Sophin to be "one and the same." Id.

Merrill Lynch also relied on phony internal documents. Ms. Srour's declaration shows that the internal documents submitted by Merrill Lynch and relied on by the Court are false. See Declaration of Anthony Campbell dated April 8, 2009 ("Campbell Decl."), Ex. A, C, G, H, K, P, Q, R. Several documents identify Mr. Bonnant as an account holder or the beneficial owner, including various Option Agreements, International Client Account Information forms and brokers notes. Id. We now know that these documents were and are bogus and were falsified.

## C. The New Evidence is Dispositive and Could not have been Obtained Prior to the Issuance of Summary Judgment

Mr. Bonnant submits that this new evidence would have changed not only the ultimate outcome, but also the Court's denial of Mr. Bonnant's cross-motion under FRCP 56(f). What the new evidence makes clear is that the interaction between Ms. Srour, Mr.

Nasser, Mrs. de Kassin, and Mr Bonnant was rather complex. Merrill Lynch expressly argued that the double signature was supported by its claim that it believed Mr. Bonnant to be Sophin's owner. In the proceedings, the Court stated "the issue is whether there is an ambiguity in this document, right?" May 2010 Proceedings, p. 7. The Court went on ask "is there an ambiguity between page 4, which has signatures of both Mr. Bonnant in a corporate capacity and Mr. Bonnant as what appears to be an account holder or on a line that says account holder, and what's on page one [i.e., where only Sophin is listed as account holder]?" Id. at 8. Merrill Lynch's counsel responded that there was no ambiguity because Sophin was Mr. Bonnant's "personal holding company" and thus that Merrill Lynch viewed Sophin and Mr. Bonnant as "one and the same" and that "[Mr. Bonnant] is the company." Id. The Court pressed further, stating: "Wait a minute. I mean, on page 1, it says, under the second box, 'Account Information. Please print the names of all account holders.' So where is Mr. Bonnant's name?" Id. at 9. Merrill Lynch agreed that "[h]is name isn't there." Id. Then the Court asked, "Is there an ambiguity between page 1 and page 4?" Id. In response, Merrill Lynch's counsel again argued that "Mr. Bonnant was the sole shareholder of this entity and the only person who had anything to do with it," essentially reiterating that Mr. Bonnant "is the company." Id. at 10. It is clear from the new evidence that Merrill Lynch always knew that Mr. Bonnant and Sophin were not "one and the same" but rather completely different.

It was impossible for Mr. Bonnant to obtain this evidence as the proceedings had never advanced to the discovery stage, as he was unable to compel Ms. Buch or Merrill Lynch to provide him with that evidence, which neither would freely offer. See INA Reinsurance Co., 609 F.3d at 131.

The new evidence does not merely impeach Merrill Lynch's credibility; it goes to

6

the heart of this case. Merrill Lynch has asserted on innumerable occasions that it always believed Mr. Bonnant was the sole owner of Sophin, and it relied on this "belief" as the central evidence that the ICMA agreement was not ambiguous. Id. at 8-10. The fact that Mr. Bonnant was not the actual owner of Sophin is therefore a dispositive issue in this case and ought not be disregarded by the Court in its consideration of this motion.

The new evidence is not "cumulative", as the declarations of Mr. Bonnant and Mrs. de Kassin did not dissuade the Court from accepting Merrill Lynch's assertion that Mr. Bonnant and Sophin were "one and the same", or from concluding in its earlier Memorandum and Order, which the Court expressly incorporated into the final judgment, that Mr. Bonnant "misrepresented to MLPF&S that he was the beneficial owner of the Sophin ICMA Account". Id. at 8; Bonnant v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 09-cv-3007, p. 9 (SDNY 2009). As Ms. Srour's declaration and accompanying exhibits clearly demonstrate Merrill Lynch's knowledge that Mr. Bonnant was not the actual owner of Sophin, the evidence in question is not cumulative but rather definitive on this issue.

D.    **The New Evidence goes not Only to the Alleged Misrepresentation, but to the Unambiguity of the Agreement**

Assuming the unambiguity of the ICMA Agreement, had this new evidence been exposed to the Court earlier Mr. Bonnant may have been able to make a prevailing argument that the ICMA Agreement should be reformed due to mutual mistake. Chimart Assoc. v. Paul, 66 N.Y.2d 570, 573 (1986)("[i]n the proper circumstances, mutual mistake or fraud may furnish the basis for reforming a written agreement..."). In a mutual mistake "the parties have reached an oral agreement and, unknown to either, the signed writing does not express that agreement". Id. The reason that the new evidence

7

is relevant to mutual mistake is that it shows that Ms. Srour's recollection (and thus

Merrill Lynch's) no relationship of any type was created between Merrill Lynch (either

MLPF&S or MLCS) and Mr. Bonnant personally.   Thus, there are issues which might

have been explored in discovery that could have rebutted even an unambiguous

agreement.

On the basis of the newly discovered evidence, Mr. Bonnant requests that

pursuant to FRCP 60(b)(2) the judgment of this Court dated May 18, 2010 be vacated.  In

addition, or alternatively, should the Court decline to vacate its previous judgment, Mr.

Bonnant requests that the Court modify the judgment in toto to the extent that the

judgment relies on the now-debunked claim that Mr. Bonnant in any way misrepresented

his status to Merrill Lynch. More specifically, Mr. Bonnant requests that the section of

the Court's June 25, 2009 Memorandum beginning with "[m]ore importantly, it appears

that Plaintiff misrepresented to MLPF&S that he was the beneficial owner of the Sophin

ICMA Account" and ending "[t]he balance of hardships cannot be said to 'decidedly' favor

a litigant who seeks to benefit from deception and avoid the consequences of his previous

representations" be vacated or modified.  The Court's May 11, 2010 ruling  expressly

incorporated the entirety of the June 25, 2009 order – "and based on the reasons set forth

previously in my June 25th 2009 order, I think arbitration is appropriate here." Tr. P. 23.

It should be noted that the Court only held that Mr. Bonnant is bound to arbitrate

with Merrill, Lynch, Pierce, Fenner & Smith, Inc. on the basis of its finding that the

ICMA Agreement is unambiguous.  As to Merrill Lynch Capital Services, Mr. Bonnant

has been ordered to arbitrate not on the basis of any unambiguous agreement but due to

"the relationships between Sophin, Plaintiff, MLPF&S, and MLCS", June 25, 2009 order,

p. 7.  Merrill Lynch has never argued that Mr. Bonnant has an unambiguous agreement

8

to arbitrate before FINRA with MLCS and so it is based on the relationships that this

Court characterized in its order.  Certainly, the new evidence shows that Merrill Lynch

mischaracterized its relationship to Mr. Bonnant, and more importantly, the extent of its

own knowledge about the lack of any substantive relationship between Mr. Bonnant

personally and MLPF&S or MLCS.   Therefore, in the alternative, Mr. Bonnant requests

that the judgment be modified to relieve Mr. Bonnant of the obligation to arbitrate with

MLCS.

## III.    The Judgment Should be Vacated or Modified Under FRPC 60(b)(3)

As noted above, Merrill Lynch's repeatedly falsely asserted that Mr. Bonnant

and Sophin were "one and the same" because Mr. Bonnant was the sole shareholder of

Sophin. In addition, Merrill Lynch submitted numerous documents falsely showing Mr.

Bonnant was the sole shareholder of Sophin. Ms. Srour's testimony shows that Merrill

Lynch knew from the outset that they were misleading the Court.

The Court would thus be justified in vacating the summary judgment order

pursuant to FRPC 60(b)(3), which allows for the Court to relieve a party from its final

judgment on the basis of "fraud (whether previously called intrinsic or extrinsic),

misrepresentation, or misconduct by an opposing party". A Rule 60(b)(3) motion cannot

be granted absent clear and convincing evidence of material misrepresentations and

cannot serve as an attempt to relitigate the merits. Fleming v. New York Univ., 865 F.2d

478, 484 (2d Cir. 1989)  Where a judgment is reached based on untruthful testimony, it is

appropriate to grant a motion of vacatur in favor of the aggrieved party. See TAS

International Travel Service v. Pan American World Airways, 1983 U.S. Dist. Lexis

16738 at **1-4 (SDNY 1983).

Mr. Bonnant was never given the opportunity to litigate his case fairly because Merrill Lynch repeatedly provided false information which was relied upon by the Court. The centerpiece of Merrill Lynch's case was the Declaration of Anthony Campbell and the exhibits thereto. Mr. Campbell stated that he was "familiar with the Sophin account" and purported to offer documents into the record. Cambell Decl., pp. 1-7. Based on the newly available information, we now know that Mr. Campbell was, at best, disingenuous in his claims of knowledge and familiarity. Mr. Campbell offered numerous Merrill Lynch documents purporting to show that Mr. Bonnant was the sole owner of Sophin. Campbell Decl., pp. 3-6. Mr. Campbell offered into evidence the following documents purporting to show Mr. Bonnant as the sole shareholder of Sophin, as well as Artonis and Opalgreen: (1) Standard Option Agreements for Sophin and Artonis (Id., Ex. A, C, G, and H); (2) an ISDA SWAP Agreement for Sophin (Id., Ex. K); and (3) three FX Credit Facility Suitability Confirmations for Opalgreen (Id., Ex. P, Q, R). We now know that these documents were falsified. As shown in detail above, in the summary judgment proceedings Merrill Lynch's counsel took the same line, asserting repeatedly that Mr. Bonnant was the sole shareholder of Sophin.

Most egregiously, Merrill Lynch offered a selection of documents from its own files that purported to show that it believed that Mr. Bonnant "the only person that Merrill Lynch knew of in connection with the Sophin Account." Taken together with the withholding of the "Standard LOA", this is surely clear and convincing evidence of material misrepresentations. See Fleming, 865 F.2d at 484. It is now undeniable that Ms. Srour knew all along that Mr. Bonnant was not the sole shareholder of Sophin. Merrill Lynch's case rested upon the misrepresentation that he was. Without the assurance that Mr. Bonnant and Sophin were "one and the same", the ICMA agreement is surely

10

ambiguous. Mr. Bonnant never had the opportunity to properly argue the case in light of this ambiguity. Had he been given the chance, the overwhelming weight of the other evidence in the record indicating that Mr. Bonnant was not the beneficial owner of Sophin would have come into play, and the result of the litigation very likely would have been in his favor.

### A.    Merrill Lynch may have Engaged in Serious Crimes in its Brazilian Operations

Moreover, it appears that the various falsified Merrill Lynch documents may have been part of widespread criminality among Merrill Lynch's Brazilian operation.  A November 11, 2010 story "Merrill Banker Indicted With 18 in Brazil Says He's Scapegoat" from Bloomberg.com, in which Claudia Srour is quoted, states:

> 'Diverse documents indicate the practice, in theory, of crimes against the national financial system by Merrill Lynch's legal representatives in Brazil,' Ricardo Cubas Cesar, a federal police supervisor in Curitiba, wrote in a May 27 report filed in court. Caiado is cooperating with prosecutors.'

Hoffman Decl. Ex. 5.

The story reports that Merrill Lynch and its employees are accused of illegally moving money owned by Brazilian citizens offshore.  Thus, it appears that Merrill Lynch had an incentive to make it appear that such accounts were owned by non-Brazilians. Due to the possibility that Merrill Lynch and its employees doctored its own documents to evade Brazilian law to make it appear that Mr. Bonnant was the beneficial owner of the Sophin account, it would be unjust to allow the judgment to stand without providing for discovery on these serious issues concerning the integrity of Merrill Lynch's documentation.

For the foregoing reasons, Mr. Bonnant requests that the judgment of this Court dated May 18, 2010 be vacated pursuant to FRCP 60(b)(3).

Dated:     New York, New York
            November 23, 2010

                           \_\_\_\_\_/s/_____
                           David J. Hoffman
                           Attorney at Law
                           29 Broadway, 27th Floor
                           New York, New York 10006
                           Tel: 917-701-3117
                           e-mail: djhoffman@djhoffmanlaw.com