## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARC BONNANT,<br><br>      Plaintiff,<br><br>v.<br><br>MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED and MERRILL LYNCH CAPITAL SERVICES, INC.,<br><br>      Defendants/Third Party Plaintiffs,<br><br>v.<br><br>SOPHIN INVESTMENTS, S.A., and EZEQUIEL NASSER,<br><br>      Third Party Relief Defendants. | Civil Action No. 09 Civ. 3007 (RJS) |

---

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' APPLICATION FOR A STAY OF ARBITRATION

---

BRESSLER, AMERY & ROSS
A Professional Corporation
17 State Street
New York, New York 10004
(212) 425-9300
Attorneys for Defendants/Third Party Plaintiffs Merrill Lynch, Pierce, Fenner & Smith Incorporated and Merrill Lynch Capital Services, Inc.

On the Brief:

David J. Libowsky, Esq.

## TABLE OF CONTENTS

**Page**

Table of Authorities ............................................................................................. ii

INTRODUCTORY STATEMENT ........................................................................ 1

STATEMENT OF FACTS ..................................................................................... 3

PROCEDURAL HISTORY ................................................................................... 6

      A.     The Arbitration............................................................................... 6

      B.     This Proceeding............................................................................. 8

ARGUMENT ....................................................................................................... 10

  POINT I .............................................................................................................. 10

  THIS COURT HAS THE POWER TO STAY AN ARBITRATION ............................ 10

  POINT II ............................................................................................................. 11

  THE COURT SHOULD STAY THE SOPHIN ARBITRATION HEARING PENDING RESOLUTION OF WHETHER BONNANT IS REQUIRED TO ARBITRATE THE THIRD PARTY CLAIM. .................................... 11

      A.     Defendants Would Suffer Irreparable Harm Absent A Stay of the Arbitration. ............................................................................ 12

      B.     Defendants Are Likely to Succeed on the Merits of Their Application or, at a Minimum, Have Presented a Serious Question Going to the Merits....................................................... 14

           1.     Bonnant Is Bound To Arbitrate By Virtue Of His Entering Into Various Account Agreements Both In Individual And Representative Capacities ....................................................... 15

           2.     Bonnant Is Bound To Arbitrate Based On Principles Of Agency And Estoppel. ............................................................ 18

           3.     The Balance of Hardships Tips Decidedly In Favor of Defendants ............................................................................ 21

CONCLUSION .................................................................................................... 24

i

## Table of Authorities

**Page(s)**

### CASES

American Bureau of Shipping v. Tencara Shipyard S.P.A.,
   170 F. 3d 349 (2d Cir. 1999) ................................................................. 18, 19, 21

Bank Julius Baer & Co., Ltd. v. Waxfield Ltd.,
   424 F. 3d 278 (2d Cir. 2005) .................................................................. 15

Beck v. Suro Textiles, Ltd.,
   612 F. Supp. 1193 (S.D.N.Y. 1991) ........................................................ 19, 20

Bensadoun v. Jobe-Riat,
   316 F.3d 171 (2d Cir. 2003) .................................................................. 22

Bonnant v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
   Nos. 10-2310-cv, 11-0742-cv, 2012 U.S. App. LEXIS 5034 (2d Cir. Mar. 8, 2012)..... 1, 9, 15

David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd.,
   923 F. 2d 245 (2d Cir. 1991) .................................................................. 15, 16

Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.,
   9 F 3d 1060 (2d Cir. 1993) .................................................................... 19, 21

Dexter 345, Inc. v. Cuomo,
   663 F.3d 59 (2d Cir. 2011) .................................................................... 12

Energy Transport, Ltd. v. M.D. Sebastian,
   348 F. Supp. 2d 186 (S.D.N.Y. 2004) ...................................................... 15

Fairfield & Co. v. Richmond, F. & P. R. Co.,
   516 F. Supp. 1305 (D.D.C. 1981) ........................................................... 23

Farrell v. Subway Int'l, B.V.,
   2011 U.S. Dist. LEXIS 29833 ................................................................ 11

Fogarazzo v. Lehman Bros., Inc.,
   341 F. Supp. 2d 274 (S.D.N.Y. 2004) ...................................................... 20

Garten v. Kurth,
   265 F. 3d 136 (2d Cir. 2001) .................................................................. 15

Gordon Capital Corp. v. Jesup, Josephthal & Co.,
   1992 U.S. Dist. LEXIS 2101 (S.D.N.Y. 1992) ............................................ 23

ii

Green Party of N.Y. State v. N.Y. State Board of Elections,
  389 F.3d 411 (2d Cir. 2004) ........................................................................... 11, 21

Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,
  596 F.2d 70 (2d Cir. 1979) ............................................................................. 12, 14

Jock v. Sterling Jewelers, Inc.,
  2010 U.S. Dist. LEXIS 132759 (S.D.N.Y. Dec. 10, 2010) ....................................... 11, 13, 14

JSG Trading Corp. v. Tray-Wrap, Inc.,
  917 F.2d 75 (2d Cir. 1990) .................................................................................13

Lederman v. N.Y. City Dep't of Parks & Rec.,
  2010 U.S. Dist. LEXIS 71425 (S.D.N.Y. July 16, 2010)......................................11

Lerner v. Amalgamated Clothing and Textile Workers Union,
  938 F. 2d 2 (2d Cir. 1991) .................................................................................18

Marcus v. Masucci,
  118 F. Supp. 2d 453 (S.D.N.Y. 2000) ..................................................................15

May v. Smith Barney Inc.,
  897 F. Supp. 100 (S.D.N.Y. 1995)................................................................. 15, 17

Mencher v. Weiss,
  306 N.Y. 1, 114 N.E. 2d 177 (1953) .............................................................. 16, 20

Mid-Hudson Publications, Inc. v. Kingston Newspaper Guild,
  1979 U.S. Dist. LEXIS 10610 (S.D.N.Y. Aug. 3, 1979)................................. 13, 14

Raffner v. Toplis & Harding, Inc.,
  25 A.D. 2d 826, 269 N.Y.S. 2d 661 (1st Dep't 1966).................................... 19, 20

Roberts v. Atlantic Recording Corp.,
  892 F. Supp. 83 (S.D.N.Y. 1995)........................................................................12

Satcom Intern. Group PLC v. Orbcomm Intern. Partners, L.P.,
  49 F. Supp. 2d 331 (S.D.N.Y. 1999)...................................................................10

Societe Generale de Surveillance, SA v. Raytheon European Mgmt. and Sys. Co.,
  643 F.2d 863 (1st Cir. 1981)..............................................................................11

Tai Ping Ins. Co. v. M/V Warschau,
  731 F.2d 1141 (5th Cir. 1984) ...........................................................................11

Thomson-CSF, S.A. v, American Arbitration Association,
  64 F. 3d 773 (2d Cir. 1995) .......................................................................... 18, 19

iii

Tube & Steel Corp. of America v. Chicago Carbon Steel Products,
     319 F. Supp. 1302 (S.D.N.Y. 1970) ....................................................................................23

Unger v. Travel Arrangements, Inc.,
     25 A.D. 2d 40, 266 N.Y.S. 2d 715 (1st Dep't 1966) .............................................................19

Veera v. Janssen,
     2005 U.S. Dist. LEXIS 13671 ......................................................................................18

Virgin Enterprises, Ltd. v. Nawab,
     335 F.3d 141 (2d Cir. 2003) ....................................................................................... 11, 21

### STATUTES

9 U.S.C. § 10(a)(3) ........................................................................................................23

Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. ......................................................... 10, 11, 13, 23

## INTRODUCTORY STATEMENT

Defendants/Third Party Plaintiffs Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") and Merrill Lynch Capital Services ("MLCS") (collectively "Defendants") respectfully submit this memorandum of law in support of their application for an Order to Show Cause.  Defendants seek to stay the arbitration pending before FINRA Dispute Resolution captioned In the Matter of the Arbitration Between Sophin Investments S.A. and Merrill Lynch, Pierce, Fenner & Smith Incorporated and Merrill Lynch Capital Services, Inc., FINRA Dispute Resolution Case No. 08-02290  (the "Arbitration" or the "Sophin Arbitration") pending this Court's determination whether Plaintiff Marc Bonnant ("Bonnant") is bound to arbitrate the Third Party Claim which Defendants have brought against him in the Arbitration.  Such determination has been mandated by the Second Circuit's recent decision vacating this Court's order granting Defendants summary judgment and compelling Bonnant to arbitrate those claims and remanding for further proceedings.  See Bonnant v. Merrill Lynch, Pierce, Fenner & Smith, Inc., Nos. 10-2310-cv, 11-0742-cv, 2012 U.S. App. LEXIS 5034, at *24 (2d Cir. Mar. 8, 2012) (summary order).

The hearing in the Arbitration is scheduled to begin on April 16, 2012, with 13 additional dates in April and May. However, the Sophin arbitration panel has refused to stay the Arbitration pending this Court's determination of this critical issue. In fact, the Panel recently ruled that it "will not adjudicate any third party claims brought by Merrill Lynch against Bonnant until such time as the Federal Court of the United States 2nd Circuit or its Subordinate courts determine that Bonnant is subject to the jurisdiction of FINRA and this panel." See 3-21-12 Order, Exhibit A to Declaration of Dominick Evangelista ("Evangelista Decl.") at 2. Defendants have renewed its request that the Sophin arbitration panel adjourn the hearing until this Court has ruled on

whether Bonnant is properly a party to the case, but the panel has not acted on the application, and there is no indication when or if it will.

Absent a stay, the Arbitration will proceed without Defendants' third party claim against Bonnant, resulting in irreparable harm to Defendants. Permitting the hearing to go forward now without first resolving whether Bonnant is properly joined as a third party respondent would mean that, if Defendants are found liable to Sophin and this Court finds that Bonnant agreed to arbitrate the claims, Defendants would have to pursue a second, duplicative arbitration against Bonnant. This would involve enormous needless expense, entail the possibility of potentially conflicting arbitral awards, and run the risk that Bonnant -- who will be participating at the hearing, both as the authorized representative of Sophin and as a key witness on its behalf -- may choose not to respond to a later-filed arbitration against him personally.  In his capacity as a third party respondent, Bonnant is an essential party in the Arbitration. Without a stay, Bonnant would be able to testify in the Arbitration with impunity, effectively immunizing himself from any liability for his conduct in connection with the Sophin Account. Complete relief cannot be attained unless Bonnant is required to arbitrate Defendants' Third Party Claim in this Arbitration. Hence, unless this Court intervenes, Merrill Lynch will suffer irreparable harm.

Defendants are likely to prevail on the issue of whether Bonnant is required to arbitrate these claims.  A proper reading of the ICMA Agreement along with the extrinsic evidence will show that Bonnant personally agreed to arbitrate claims against him when he executed that agreement. At minimum, Defendants have raised a substantial question going to the merits.

Finally, the balance of hardships tips decidedly in favor of Defendants. The Sophin Arbitration has been pending since 2008, having been delayed for years by disputes among members of the Nasser family concerning who is the beneficial owner over which of the family's

2

numerous personal holding companies, including Sophin.  There is no reason to believe that a brief additional delay to permit this Court to hear and resolve the discrete question of whether Bonnant agreed to arbitrate these claims will cause undue prejudice to any of the parties to the arbitration, including Bonnant himself.  By contrast, allowing the proceeding to go forward before the Court has made that determination would cause significant hardship to Defendants, including the very real possibility that it may never be able to pursue its claims against Bonnant.

Defendants respectfully request that this Court enter an order staying the Arbitration pending determination of whether Bonnant must arbitrate the Third Party Claims.[1]

### STATEMENT OF FACTS

On December 11, 2001, Bonnant opened a non-discretionary securities brokerage account in the name of Sophin[2] with a Merrill Lynch office in New York City, designated Account No. 1AG-07969 (the "Account" or the "Sophin Account").[3]  Claudia Srour Buch was the Merrill Lynch financial advisor responsible for the handling of the Account.[4]  Declaration of Anthony Campbell ("Campbell Decl."), ¶ 2.

Bonnant signed various account documents in connection with the Sophin Account, including without limitation an International Cash Management Account Agreement dated November 12, 2001 (the "ICMA Agreement" or "Sophin ICMA Agreement"), corporate

---

[1] Concurrent with the instant application, Defendants have filed a third party complaint naming the other parties to the Arbitration, i.e., Sophin and Ezequiel Nasser ("Nasser"), along with FINRA Dispute Resolution as third party relief defendants. Defendants do not seek any affirmative relief from Sophin, Nasser or FINRA Dispute Resolution. Instead, Defendants have joined Sophin, Nasser and FINRA Dispute Resolution as third party relief defendants for the sole purpose of placing them on notice of the relief sought herein.

[2] Sophin is a personal holding company organized under the laws of the British Virgin Islands. Campbell Decl., ¶ 2.

[3] The Account subsequently transferred to Sao Paulo, Brazil, and was redesignated Account No. 151-07920.  The Account then moved back to New York in February 2008 and was redesignated Account No. 1XN-07920. Campbell Decl., ¶ 2.

[4] Bonnant simultaneously opened accounts with Merrill Lynch for two other entities -- Artonis Group, Inc. ("Artonis") and Opalgreen International Ltd. ("Opalgreen"), both of which are also personal holding companies incorporated in the British Virgin Islands.  Like the Sophin account, the Artonis and Opalgreen accounts were subsequently transferred to Sao Paulo and thereafter back to New York.  Ms. Srour was also responsible for the handling of the Artonis and Opalgreen accounts. Campbell Decl., ¶ 4.

resolutions, a tax identification form, option agreements dated October 17, 2002 and February 10, 2006, and a confidential letter dated March 26, 2004.   See 2-10-06 Sophin Option Agreement, ICMA Agreement, 10-17-02 Option Information Form and Standard Option Agreement ("10-17-02 Sophin Option Agreement"), and 3-26-04 Confidential Letter for Sophin Account, attached to the Campbell Decl. as Exhibits A, B, C, and D.[5]   The ICMA Agreement required Sophin to satisfy any unsecured debit balance in its account upon demand by Merrill Lynch.   The ICMA Agreement and option agreements also required Sophin to arbitrate all controversies with Merrill Lynch, while the confidential letter agreement, which was signed on March 26, 2004, incorporated by reference the arbitration provisions contained in the agreements that had heretofore been executed (i.e., the ICMA Agreement and the October 17, 2002 option agreement).[6]   Campbell Decl., ¶ 5.

   The account documents for the Sophin Account designated Bonnant not only as Sophin's Director and sole representative authorized to give instructions to Merrill Lynch for the purchase or sale of securities, but also the beneficial owner of the Account. See Campbell Decl., Exhibit B.   Thus, Bonnant represented in writing that Sophin was his personal holding company, that the assets that Sophin was placing into the Account were his assets, and that he was the sole beneficial owner and/or sole owner of Sophin and therefore the Account.   In this regard, the Merrill Lynch account documents for the Sophin Account, including documentation signed by

---

[5] Mr. Bonnant signed identical ICMA Agreements, corporate resolutions, option agreements, tax identification forms and confidential letter agreements in connection with the Artonis and Opalgreen accounts.   See Campbell Decl., ¶ 5. The ICMA Agreements and option agreements for these accounts contained the identical arbitration provisions, which were likewise incorporated by reference into the confidential letter agreements.   Id.

[6] Bonnant also signed on behalf of Sophin an option agreement dated October 29, 2007.   Like the earlier option agreements, the October 29, 2007 option agreement contains a provision requiring that Sophin arbitrate all disputes with Merrill Lynch.  10-29-07 Option Information Form and Standard Option Agreement for Sophin Account ("10-29-07 Sophin Option Agreement"). See Campbell Decl., Exhibit E. In addition, Sophin also entered into an ISDA Master Agreement with MLCS as counterparty on September 18, 2006 (the "ISDA Agreement"), which agreement governs Sophin's interest rate swap transactions with MLCS. See 9-18-06 ISDA Agreement. See Campbell Decl., Exhibit F. Bonnant executed the ISDA Agreement on behalf of Sophin.

Bonnant, show without exception that no one other than  Bonnant had an interest in the Account. See Campbell Decl., Exhibits A, C, and D.  See also Campbell Decl., Exhibit G, 12-11-01 W-8BEN for the Sophin Account.

The Merrill Lynch records reflect that Bonnant signed the relevant account agreements and other documentation not only in a representative capacity as Director of Sophin but also in an individual capacity.   The signature lines to which Bonnant twice affixed his signature, including "as a separate '[a]ccount holder…,'" appear immediately below one of the arbitration provisions in the ICMA Agreement.  See Campbell Decl., Exhibit B.  Further, Bonnant is listed as an additional client on the October 17, 2002 option agreement, see Campbell Decl., Exhibit C, and as the beneficial owner of Sophin on the February 10, 2006 option agreement. See Campbell Decl., Exhibit A.  Finally, Bonnant signed the March 26, 2004 confidential letter stating that the Sophin ICMA Account "is his account," that he is "the sole owner thereof," and that "any and all agreements made by [Bonnant] with reference to [Bonnant's] account… shall apply to the [Sophin ICMA Account] with the same force and effect as though the account… so designated stood in [Bonnant's] own name without qualification."  See Campbell Decl., Exhibit D.[7] Among the agreements incorporated by reference in the March 26, 2004 letter were the agreements to arbitrate disputes set forth in the ICMA Agreement and the October 17, 2002 option agreement. See Campbell Decl., Exhibits B and C.

As counsel for Bonnant has conceded, at the time Bonnant signed the March 26, 2004 letter, he in fact intended to sign for Sophin.  See Evangelista Decl., Exhibit C, June 18, 2009 Transcript of Oral Argument on Plaintiff's Motion for a Preliminary Injunction ("6-18-09 Tr.").  Correspondence was sent to Bonnant by the Sao Paulo office in 2006 and 2007 requesting that

---

[7] The text of the March 26, 2004 confidential letter is part of the preprinted text of the document and was before Bonnant when he allegedly signed the letter in blank.  See Campbell Decl., Exhibit D.

Bonnant confirm that the financial and investment-related background and experience information along with the aggressive growth investment objective/risk tolerance set forth in the Merrill Lynch account documentation for the Sophin Account accurately described his personal financial and investment-related background and experience and investment objective/risk tolerance.  See Campbell Decl., Exhibits A and E.

## PROCEDURAL HISTORY

#### A.   The Arbitration

On July 7, 2008, Sophin commenced the Arbitration.  See Evangelista Decl., ¶ 3.  In its Statement of Claim, Sophin alleges that Camelia de Kassin ("de Kassin"), and not Bonnant, was the beneficial owner of Sophin and the Account.  Sophin further alleges that de Kassin "was an unsophisticated investor and was risk averse." Id. Bonnant never disclosed to Merrill Lynch, nor was Merrill Lynch otherwise ever aware at any relevant time, that: (a) de Kassin or any one else was the actual beneficial owner of Sophin and the Account; (b) he did not hold any interest in Sophin or the Account; or (c) de Kassin's alleged investment profile was completely different from the aggressive growth investment profile that Bonnant represented to Merrill Lynch. Evangelista Decl., ¶ 3.

Bonnant represented in writing to Merrill Lynch that the principal he was acting on behalf of in connection with the Account was Sophin.  See Campbell Decl., Exhibits A, B, C, D, and G.  Bonnant's true principal, it now appears, was de Kassin, as Sophin is merely a personal holding company. See Evangelista Decl., Exhibit C. Bonnant failed to disclose de Kassin's identity and her purported relationship to Sophin and the Account to Merrill Lynch.   See Campbell Decl., Exhibits A, B, C, D and G.

The Statement of Claim asserts claims against Merrill Lynch for unauthorized trading, failure to supervise, unsuitability, fraud and breach of fiduciary duty.  Sophin claims that in

October 2007, Merrill Lynch allegedly altered the Account's purported "conservative investment profile" without the authorization or knowledge of either Bonnant or de Kassin, and thereafter entered numerous allegedly unauthorized trades involving sales of naked put options and swaps that neither Bonnant nor de Kassin initiated or approved.  Sophin claims losses of nearly $23 million as a result of the alleged unauthorized and unsuitable trading activity.  See Declaration of Brian F. Amery dated April 8, 2009 ("Amery Decl."), ¶ 2.

        As detailed in Defendants' Answer to the Statement of Claim, however, the nature of the trading activity in the Account prior to October 2007 was in fact aggressive and high risk, including without limitation sales of the very same naked puts and purchases of interest rate swaps about which it complains.  See Evangelista Decl., ¶ 4.

        As he has admitted during a hearing in the Arbitration, Bonnant, the only person that Merrill Lynch knew of in connection with the Sophin Account, explicitly authorized Nasser, who is de Kassin's brother, to trade this non-discretionary account in the aggressive, high risk manner in which he represented to Merrill Lynch to be the Account's objective, contrary to the alleged conservative investment objective of his undisclosed principal, de Kassin.  See 6-18-09 Tr., Exhibit C to Evangelista Decl.

        The benefit of trading the Account in an aggressive, high risk manner is further manifested by the multi-million dollar transfers of funds to and from the Sophin Account involving the other Bonnant Accounts that Bonnant directed during the period from October 2002 through March 2008.  Examples of the millions of dollars worth of intra-Bonnant Account transfers that Bonnant directed during this timeframe are: (i) approximately $3.8 million from the Sophin Account to the Artonis Account; (ii) approximately $250,000 from the Sophin Account to the Opalgreen Account; (iii) approximately $19.6 million from the Artonis Account to the

7

Sophin Account; and (iv) approximately $17.8 million from the Opalgreen Account to the Sophin Account. See Amery Decl., Exhibit B.

In addition to answering the Statement of Claim, Defendants asserted a counterclaim against Sophin for $5,470,216.27 in damages, broken down as follows: (i) the $2,487,511.00 unsecured debit balance in the Sophin Account owed to Merrill Lynch resulting from the Account's liquidation; and (ii) the $2,982,749.27 early termination payment owed to MLCS resulting from Sophin's cross-default under the ISDA Agreement for failure to satisfy the unsecured debit balance (the "Counterclaim"). See Evangelista Decl., ¶5.

On December 3, 2008, Defendants filed the Third Party Claim against Bonnant. Evangelista Decl., ¶ 6. The Third Party Claim seeks indemnification from Bonnant for any amounts the arbitration panel may award Sophin on its Statement of Claim. See Evangelista Decl., Exhibit D, 12-3-08 Third Party Claim against Marc Bonnant. Bonnant submitted an Answer to the Third Party Claim on February 18, 2009. Evangelista Decl., ¶ 6. In his Answer, Bonnant denied the allegations of the Third Party Claim in all material respects. Id. He also asserted that FINRA Dispute Resolution and the arbitration panel did not have jurisdiction over him. Id. Defendants also filed a third party claim against Nasser for indemnification. Evangelista Decl., ¶ 6.[8]

**B.    This Proceeding**

On March 27, 2009, Bonnant commenced the instant action to enjoin Defendants from arbitrating the Third Party Claim. On July 7, 2009, Defendants moved for summary judgment

---

[8] Subsequently, Nasser challenged de Kassin's status as the beneficial owner of Sophin, alleging that he was the beneficial owner of Sophin while she was the beneficial owner of Artonis. On June 29, 2011, following a hearing, the Panel ruled that de Kassin is the beneficial owner of the Lichtenstein trust that owns Sophin, while Nasser is the beneficial owner of the Lichtenstein trust that owns Artonis. See 6-29-11 Panel Order, Exhibit F to Evangelista Decl. Sophin thereafter filed an amended Statement of Claim on August 1, 2011, with Defendants filing an amended Answer and Counterclaim on November 23, 2011. Evangelista Decl., ¶ 6. There was no amendment to the Third Party Claim against Bonnant in connection with the foregoing amended pleading.

and to compel Bonnant to arbitrate the Third Party Claim pursuant to the arbitration provision contained in the ICMA Agreement.  On May 11, 2010, this Court entered an order granting Defendants summary judgment and compelling Bonnant to arbitrate the Third Party Claim. This Court held that in signing the ICMA Agreement on behalf of Sophin, Bonnant unambiguously identified himself as "account holder" or otherwise consented to arbitration, thereby personally agreeing to arbitrate claims (in addition to agreeing on behalf of Sophin to arbitrate claims). Judgment in favor of Defendants was entered on May 18, 2010. See PACER Docket, Entry Nos. 1, 2 29-32, 54 and 55.

Bonnant appealed the judgment to the United States Court of Appeals for the Second Circuit.  On March 8, 2012, the Second Circuit vacated and remanded the judgment. See Bonnant v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 2012 U.S. App. LEXIS 5034 (2d Cir. March 8, 2012) (summary order). The Second Circuit held that the ICMA Agreement did not unambiguously establish that Bonnant had personally agreed to arbitrate the Third Party Claim, thereby precluding summary judgment in favor of Merrill Lynch and MLCS and directing this Court to determine whether the ICMA Agreement, "considered in its entirety, can sensibly be construed to include Bonnant's personal agreement to arbitrate disputes arising out of the Sophin agreement, and, if so, whether extrinsic evidence the parties may offer demonstrates such a status." Bonnant, 2012 U.S. App. LEXIS 5034 at *24.

As a result of the vacatur of the judgment, Bonnant is no longer required to arbitrate the Third Party Claim and will not voluntarily consent to arbitrate this claim.  Evangelista Decl., ¶ 8. As a result, this Court must determine whether Bonnant is required to arbitrate the Third Party Claim before the Hearing can proceed. As the Third Party Claim is inextricably intertwined with the main claims and counterclaims asserted by and between Sophin and Defendants, and because

9

Bonnant will be present at the Hearing as Sophin's authorized representative and a witness on its behalf, considerations of conservation of arbitral and party resources dictate that the Third Party Claim be litigated and adjudicated in one proceeding (insofar as Bonnant is required to arbitrate these claims) instead of two separate proceedings.

As this Court will not be in any position to resolve whether Bonnant is bound to arbitrate the Third Party Claim before the Hearing begins on April 16, 2012, Defendants requested that Sophin agree to adjourn the Hearing pending resolution of this issue. Obviously realizing that if the Arbitration proceeds *without* Bonnant -- Sophin's authorized representative -- this Court's ultimate determination would be rendered irrelevant, Sophin -- through its authorized representative Bonnant -- refused  to consent to the request for a postponement of the Hearing. Defendants thereafter asked the Sophin arbitration panel to postpone the Hearing.  The Panel denied Defendants' request, advising that the Hearing will not be stayed in the absence of a court order.  The Panel subsequently ruled that it will not adjudicate the Third Party Claim until this Court determines that Bonnant is required to arbitrate this claim. See Evangelista Decl.,¶ 2 and Exhibit A.

Accordingly, this Court should enter an Order staying the Hearing pending resolution of whether Bonnant is required to arbitrate the Third Party Claim.

## ARGUMENT

### POINT I

### THIS   COURT   HAS   THE   POWER   TO   STAY   AN ARBITRATION

Federal courts have routinely held that the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. (the "FAA") permits a court to stay or enjoin an arbitration in appropriate circumstances. Satcom Intern. Group PLC v. Orbcomm Intern. Partners, L.P., 49 F. Supp. 2d 331, 342 (S.D.N.Y. 1999)

("While § 3 of the FAA gives federal courts the power to stay trials pending arbitration, [a] number of courts have held that, in appropriate circumstances, § 4 of the FAA may be applied to stay or enjoin arbitration proceedings.") This authority, as interpreted by the district courts, is based on the reasonable inference that the court's power to compel arbitration includes the power to stay or enjoin such arbitration. See Farrell v. Subway Int'l, B.V., 2011 U.S. Dist. LEXIS 29833, **5-6 (S.D.N.Y. Mar. 23, 2011); Jock v. Sterling Jewelers, Inc., 2010 U.S. Dist. LEXIS 132759, *9-11 (S.D.N.Y. Dec. 10, 2010). "It would follow . . . that the court should have a concomitant power to enjoin arbitration where arbitration is inappropriate. A failure to do so would frustrate the goals of arbitration, since there would be delay and increased expense as the parties litigated in both fora." Farrell, 2011 U.S. Dist. LEXIS at **5-6 (citing Satcom Int'l Group PLC v. Orbcomm Int'l Partners, 49 F. Supp. 2d 331, 342 (S.D.N.Y. 1999)). As such, this Court has the authority to grant the relief requested herein. See also Tai Ping Ins. Co. v. M/V Warschau, 731 F.2d 1141, 1144 (5th Cir. 1984); Societe Generale de Surveillance, SA v. Raytheon European Mgmt. and Sys. Co., 643 F.2d 863, 867-68 (1st Cir. 1981).

## POINT II

### THE COURT SHOULD STAY THE SOPHIN ARBITRATION HEARING PENDING RESOLUTION OF WHETHER BONNANT IS REQUIRED TO ARBITRATE THE THIRD PARTY CLAIM.

The Second Circuit has consistently held that a preliminary injunction may be granted where the moving party can demonstrate "probability of irreparable harm in the absence of injunctive relief, and either a likelihood of success on the merits of its claim or a serious question going to the merits and a balance of the hardships tipping decidedly in its favor." Virgin Enterprises, Ltd. v. Nawab, 335 F.3d 141, 145 (2d Cir. 2003); accord Green Party of N.Y. State v. N.Y. State Board of Elections, 389 F.3d 411, 418 (2d Cir. 2004). See also Lederman v. N.Y.

City Dep't of Parks & Rec., 2010 U.S. Dist. LEXIS 71425, *14 (S.D.N.Y. July 16, 2010) quoting Jolly v. Coughlin, 76 F.3d 468, 473 (2d Cir. 1996) ("…a party seeking to obtain a preliminary injunction must establish that it will suffer irreparable harm in the absence of an injunction and demonstrate either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly in the movant's favor.").

Defendants have satisfied all of the requirements to obtain preliminary injunctive relief. Without injunctive relief, Defendants would suffer irreparable harm by being forced to move forward with the upcoming arbitration hearing without having its Third Party Claim against Bonnant adjudicated as part of the Arbitration, as there would be no effective avenue for Defendants to obtain relief against Bonnant in a subsequent proceeding. Furthermore, Defendants are likely to succeed in establishing that Bonnant should be compelled to arbitrate on the basis of extrinsic evidence that demonstrates Bonnant's intent to bind himself in his personal capacity; at minimum, they have shown a substantial question going to the merits. The balance of hardships, moreover, tips in favor of Defendants.

**A.   Defendants Would Suffer Irreparable Harm Absent A Stay of the Arbitration.**

A party seeking injunctive relief must establish a likelihood of irreparable injury if the requested relief is not granted. Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979); Roberts v. Atlantic Recording Corp., 892 F. Supp. 83, 88 (S.D.N.Y. 1995) (observing that a party seeking injunctive relief must show a likelihood of irreparable injury as opposed to a mere possibility of irreparable injury).  Irreparable injury is "an injury that is not remote or speculative but actual and imminent." Dexter 345, Inc. v. Cuomo, 663 F.3d 59 (2d Cir. 2011) (citing Tom Doherty Assocs. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979)). "Irreparable injury is one that cannot be redressed through a monetary award.  Where money

12

damages are adequate compensation a preliminary injunction should not issue." <u>JSG Trading Corp. v. Tray-Wrap, Inc.</u>, 917 F.2d 75, 79 (2d Cir. 1990).

The pendency of a decision from the court which affects several actions arising from the same controversy gives rise to irreparable harm.  In <u>Jock</u>, the plaintiffs moved for an order enjoining various arbitration proceedings during the pendency of the Second Circuit's consideration of an appeal of the district court's denial of class arbitration. <u>Jock</u>, 2010 U.S. Dist. LEXIS 132759 at *3.  After determining that the court had the power to enjoin arbitrations under the FAA, Judge Rakoff found that a preliminary injunction under these circumstances was warranted because the plaintiffs faced an irreparable injury if forced to proceed in several individual actions during the pendency of the appeal.  <u>Id.</u> at *11-12.  To hold otherwise would compel "plaintiffs and members of the putative class to choose between pursuing their claims in individual arbitrations while the plaintiffs' appeal is pending or else risk losing the possibility of bringing and individual claim" based on an expiration of the application statute of limitations. <u>Id.</u>  This is analogous to the instant matter..  Should Defendants be forced to arbitrate the claims brought by Sophin without the ability to prosecute their own claims against Bonnant, they will be forced to litigate separate actions because of the pendency of this proceeding before the Court.

Likewise, in <u>Mid-Hudson Publications, Inc. v. Kingston Newspaper Guild</u>, 1979 U.S. Dist. LEXIS 10610 (S.D.N.Y. Aug. 3, 1979), the court found that the time and expense of defending an arbitration during the pendency of another action affecting both disputes constitutes irreparable harm.  "The Court is of the opinion that a substantial danger exists that plaintiffs will suffer irreparable injury if the arbitration goes forward before a decision on the merits since plaintiffs would be put to the time and expense of defending the arbitration as well as the cost of later review." <u>Id.</u>  Further, the court noted that a stay of the arbitration would merely

13

inconvenience defendant. Id.  As with Jock, the factors warranting a stay of the arbitration in Mid-Hudson apply here.

Here, Defendants would suffer irreparable harm if forced to proceed with the Hearing before this Court has determined whether Bonnant is required to arbitrate the Third Party Claim. Without a stay, Defendants would be burdened with the cost and expense of arbitrating the dispute without being able to litigate their closely related third party claims against Bonnant in the same proceeding. A key aspect of Merrill Lynch and MLCS's defenses hinges upon establishing Bonnant's responsibility for the trades at issue as the sole Director of Sophin. As such, Defendants assert that Bonnant is liable to them for any losses sustained by Sophin for which the arbitration panel determines Defendants to be ultimately responsible.  Defendants cannot obtain complete relief in the Arbitration unless they are permitted to assert the Third Party Claim in this proceeding.

Indeed, as noted supra, Bonnant is participating in the Arbitration only because he is prosecuting Sophin's claims. If the Arbitration is not stayed and Defendants are required to assert their indemnification claims against Bonnant in a separate proceeding, there is a considerable risk that Bonnant will decline to appear for such a proceeding, leaving Defendants without a remedy against him. The threat of irreparable harm to Defendants is thus clear.

**B.**   **Defendants Are Likely to Succeed on the Merits of Their Application or, at a Minimum, Have Presented a Serious Question Going to the Merits.**

In addition to a showing of irreparable harm, a party seeking preliminary injunctive relief must show either a likelihood of success or a substantial question going to the merits. Jackson Dairy, 596 F.2d at 72. On remand from the Second Circuit, this Court will consider "whether the agreement, considered in its entirety, can sensibly be construed to include Bonnant's personal agreement to arbitrate disputes arising out of the Sophin agreement, and, if so, whether extrinsic

14

evidence the parties may offer demonstrates such a status." Bonnant, 2012 U.S. App. LEXIS 5034 at *24. In light of both the ICMA Agreement as a whole and supporting extrinsic evidence, Defendants will likely be able to establish that Bonnant is bound to arbitrate based on principles of contract and agency. At a minimum, Defendants have raised serious questions as to whether Bonnant agreed to arbitrate claims against him.

### 1.   Bonnant Is Bound To Arbitrate By Virtue Of His Entering Into Various Account Agreements Both In Individual And Representative Capacities.

Defendants are likely to succeed in showing that Bonnant bound himself in an individual capacity (in addition to binding Sophin) to arbitrate disputes with Merrill Lynch based on his execution of the Sophin ICMA Agreement, option agreements and letter agreement; at minimum, they have raised a substantial question as to whether Bonnant has agreed to arbitrate. In determining whether parties have entered into a binding arbitration agreement, a court is to "employ ordinary contract principles." Marcus v. Masucci, 118 F. Supp. 2d 453, 455 (S.D.N.Y. 2000); May v. Smith Barney Inc., 897 F. Supp. 100, 107-08 (S.D.N.Y. 1995). As in any other instance of contract interpretation, "the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." Energy Transport, Ltd. v. M.D. Sebastian, 348 F. Supp. 2d 186, 202 (S.D.N.Y. 2004) (quoting Mitsubishi Motors Corp. v. Soler Chyrsler-Plymouth, Inc., 473 U.S. 614, 626, 105 S. Ct. 3346 (1985)); Marcus, 118 F. Supp. 2d at 455. This is because federal policy requires courts "'to construe arbitration clauses as broadly as possible....'" David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd., 923 F. 2d 245, 250 (2d Cir. 1991) (quoting S.A. Mineracao da Trindade-Samitri v. Utah International, Inc., 745 F. 2d 190, 194 (2d Cir. 1984)), and to "resolve questions of arbitrability in favor of arbitration." Garten v. Kurth, 265 F. 3d 136, 142 (2d Cir. 2001); Bank Julius Baer & Co., Ltd. v. Waxfield Ltd., 424 F. 3d 278, 281-82 (2d Cir. 2005) (holding that "any doubts concerning the scope of

15

arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability"). In accordance with this strong federal policy in favor of arbitration, "arbitration should be compelled unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Threlkeld, 923 F. 2d at 250 (quoting McAllister Bros., Inc. v. A&S Transportation Co., 621 F. 2d 519, 522 (2d Cir. 1980)).

The ICMA Agreement, considered in its entirety, clearly can be construed to include Bonnant's personal agreement to arbitrate disputes arising out of the Sophin Account. Bonnant signed the ICMA Agreement twice, once on behalf of Sophin in a representative capacity and a second time individually as a separate account holder. In fact, the signature lines to which Bonnant twice affixed his signature, including as a separate account holder, appear immediately below one of the arbitration provisions in the ICMA Agreement. The ICMA Agreement defines the terms "I" and "account holder" as meaning "each natural or legal person who signs the [ICMA Agreement]." Such terms as set forth in the ICMA Agreement's acknowledgement page and in Paragraph 8 of the Agreement thus refer to Bonnant not only in his capacity as a representative of Sophin but also in his individual capacity in that Bonnant is a "natural…person" who signed the ICMA Agreement as a separate "account holder."

By virtue of the fact that Bonnant signed this agreement, he is conclusively bound to the ICMA Agreement in an individual capacity; Bonnant's intent to be personally bound to the Sophin arbitration agreements is evident from his multiple signatures on same. Mencher v. Weiss, 306 N.Y. 1, 8, 114 N.E. 2d 177, 181 (1953) (rejecting argument by defendant corporate president who signed collective bargaining agreement on behalf of corporation that he would not bound individually to said agreement, Court of Appeals held that "[defendant's] contention that

16

he did not intend to be bound personally is unavailing in the face of the clear manifestation of intention by the parties that he be so bound").

Furthermore, extrinsic evidence supports Defendants' position that Bonnant did, in fact, open the account in both representative and individual capacities and express an intent to bind himself personally.  First, Bonnant is listed as an "additional client[ ]" on the October 17, 2002 option agreement. See Campbell Decl., Exhibit C.  Second, Bonnant is listed as the beneficial owner of Sophin on the February 20, 2006 option agreement.  See Campbell Decl., Exhibit A. Third, in signing the March 26, 2004 letter, Bonnant confirmed that the Sophin Account "is [his] account," that he is "the sole owner thereof," and that "any and all agreements made by [Bonnant] with reference to [Bonnant's] account... shall apply to the [Sophin ICMA Account] with the same force and effect as though the account... so designated stood in [Mr. Bonnant's] own name without qualification."  Among the "agreements made by [Bonnant]…." that are incorporated by reference in the letter are the ICMA Agreement and October 17, 2002 option agreement.  Like his two signatures on the ICMA Agreement, this language also suggests that Bonnant opened the Sophin Account in both representative and individual capacities.

In light of the strong federal policy in favor of arbitration mandating that any doubts be resolved in favor of arbitration, coupled with Bonnant's clear intention as manifested by his execution of the ICMA Agreement, option agreements and confidential letter, Bonnant clearly bound himself individually to the arbitration provisions contained and/or incorporated by reference in those documents, requiring that he arbitrate the Third Party Claim.  See May, 897 F. Supp. at 108 (granting defendant's motion to compel arbitration, district court held that "[u]nder New York law, one who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusorily presumed to know its

17

contents and to assent to them…."). In light of the agreement and supporting extrinsic evidence, Defendants are likely to establish that Bonnant in fact personally bound himself to arbitrate disputes with Merrill Lynch. At the very least, Defendants have raised serious questions on the merits of this issue.

### 2.    Bonnant Is Bound To Arbitrate Based On Principles Of Agency And Estoppel.

Courts in the Second Circuit have repeatedly held that parties signing arbitration agreements in a representative capacity, and even non-signatories, may be bound to an arbitration agreement if so dictated by "ordinary principles of contract and agency." Thomson-CSF, S.A. v. American Arbitration Association, 64 F. 3d 773, 776 (2d Cir. 1995) (quoting McAllister Bros., Inc. v. A&S Transp. Co., 621 F. 2d 519, 524 (2d Cir. 1980)). Courts have recognized five theories under which such persons may be bound to the arbitration agreements of others: (a) incorporation by reference; (b) assumption; (c) agency; (d) veil piercing/alter ego; and (e) estoppel. American Bureau of Shipping v. Tencara Shipyard S.P.A., 170 F. 3d 349, 352 (2d Cir. 1999); Thomson, 64 F. 3d at 776. As detailed below, the agency and estoppel theories bind Bonnant to the arbitration provisions contained and/or incorporated by reference in the various agreements that he signed, thereby requiring him to arbitrate the Third Party Claim.

Under the agency theory, an agreement to arbitrate will bind an agent acting on behalf of a disclosed principal only where "there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal." Lerner v. Amalgamated Clothing and Textile Workers Union, 938 F. 2d 2, 6-7 (2d Cir. 1991) (quoting Mencher v. Weiss, 306 N.Y. 1, 4, 114 N.E. 2d 177, 179 (1953)); Veera v. Janssen, 2005 U.S. Dist. LEXIS 13671, **10-11 (S.D.N.Y. July 5, 2005). However, an agent who enters into a contract containing an arbitration provision on behalf of an undisclosed principal is personally

18

bound to such agreement to arbitrate.  <u>See, e.g.</u>, <u>Beck v. Suro Textiles, Ltd.</u>, 612 F. Supp. 1193, 1194 (S.D.N.Y. 1991) (in denying petitioner agent's application to stay arbitration pursuant to arbitration agreement contained in purchase orders that petitioner claimed he signed on behalf of his corporate entity, the court rejected petitioner's argument that he was not personally obligated to arbitrate respondent's claims and that only his corporate entity was required to arbitrate, holding that none of the purchase orders gave any indication that petitioner had signed them as an agent for the corporate entity).  This is consistent with the long standing New York rule that an agent for an undisclosed principal is liable on any contract that he makes on behalf of his principal.  <u>Raffner v. Toplis & Harding, Inc.</u>, 25 A.D. 2d 826, 269 N.Y.S. 2d 661, 662 (1st Dep't 1966); <u>Unger v. Travel Arrangements, Inc.</u>, 25 A.D. 2d 40, 47, 266 N.Y.S. 2d 715, 722 (1st Dep't 1966).  Under the estoppel theory, a non-signatory is estopped from denying his obligation to arbitrate where such party has "knowingly exploited" the agreement containing the arbitration clause such that he has received a "direct benefit" from such contract.  <u>Tencara</u>, 170 F. 3d at 353; <u>Thomson</u>, 64 F. 3d at 776; <u>Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.</u>, 9 F 3d 1060, 1064 (2d Cir. 1993).

Here, Bonnant is required to arbitrate the Third Party Claim under both of these theories.  First, as discussed above, Bonnant clearly intended to add his personal liability to arbitrate disputes with Merrill Lynch to that of his principal Sophin by: (i) executing the Sophin ICMA Agreement "as a separate '[a]ccountholder;'" (ii) being listed as an "additional client[ ]" and the beneficial owner of the Sophin Account in the October 17, 2002 and February 20, 2006 option agreements; and (iii) signing the March 26, 2004 letter confirming that the Sophin Account "is [his] account," that Bonnant is "the sole owner thereof," and that "<u>any and all agreements</u> made by [Bonnant] with reference to [Bonnant's] account … shall apply to the Sophin ICMA Account]

with the same force and effect as though the account ... so designated <u>stood in [Bonnant's] own name without qualification</u>."  As such, Bonnant expressly agreed to all of the terms contained and/or incorporated by reference in the various account documents -- including the arbitration provisions -- in his individual (as well as representative) capacity.  <u>See, e.g.</u>, <u>Mencher</u>, 306 N.Y. at 4 (holding defendant, who was president of the contracting corporation but not a director or stockholder, individually liable for non-performance of a collective bargaining agreement with labor union where defendant affixed his signature to the agreement on a line to the immediate left of which is the printed word "Member" (in addition to his corporate title appearing to the right of the signature), the Court of Appeals concluded that "by so doing defendant acquiesced in and accepted the designation of 'Member' of the contracting employer," thereby binding defendant individually to the agreement).

Alternatively, in light of the Panel's ruling that de Kassin is the beneficial owner of Sophin, Bonnant failed to disclose to Merrill Lynch the identity of the principal on whose behalf he was acting -- a fact that he needed to disclose in order to make his representations about Sophin not misleading.  <u>See</u> <u>Fogarazzo v. Lehman Bros., Inc.</u>, 341 F. Supp. 2d 274, 294 (S.D.N.Y. 2004) ("[a] statement can...be misleading, though not technically false, if it amounts to a half-truth by omitting some material fact").  By failing to disclose de Kassin's identity and relationship to Sophin and the Account, Bonnant acted on behalf of an undisclosed principal in connection with the Account.  As a result, he personally bound himself to the various account agreements and the arbitration provisons contained and/or incorporated by reference therein. <u>Beck</u>, 612 F. Supp. at 1194; <u>Raffner</u>, 25 A.D. 2d at 827-27.

Third, with respect to the estoppel theory, Bonnant misrepresented to Merrill Lynch that Sophin was his personal holding company, that the assets in the Account belonged to him, that

no other person held an interest in the Account, and that the Account's investment objective was growth and its risk tolerance aggressive.  <u>See</u> Campbell Decl., Exhibits A, B, C and D.  Such representations were materially false because, as alleged in the Statement of Claim, de  Kassin is the actual beneficial owner of Sophin and the Account and her investment profile bears no resemblance to the profile Bonnant presented to Merrill Lynch. Consistent with those misrepresentations, Bonnant permitted Nasser to direct the trading activity in the Account in the manner that he saw fit rather than in the matter now alleged by Sophin.  By allowing the Sophin Account to be traded aggressively rather than the manner in which Sophin now claims it should have been traded, Bonnant treated the Account as his own, consistent with his representations that the Sophin Account (like the Artonis and Opalgreen Accounts) in fact belonged to him.  The fact that Bonnant treated the Sophin Account as his own is also borne out by the multi-million dollar transfers of funds that he directed among the Bonnant Accounts, including the Sophin Account.  Bonnant thus directly benefited from the Sophin ICMA Agreement which requires that any disputes with Merrill Lynch be arbitrated.  As a consequence, Bonnant is estopped from avoiding his obligation to arbitrate the Third Party Claim.   <u>See</u> <u>Tencara</u>, 170 F. 3d at 353 (non-signatory owners of ship built by defendant shipyard were estopped from avoiding arbitration where they obtained direct benefits from relevant agreement); <u>Deloitte</u>, 9 F. 3d at 1064 (accounting firm estopped from avoiding arbitration where it received a valuable asset of being able to use the <u>Deloitte</u> name in connection with rendering accounting services).

### 3.      The Balance of Hardships Tips Decidedly In Favor of Defendants

Finally, a party moving for preliminary injunctive relief must show that "the balance of the hardships tip[s] decidedly in its favor." <u>Virgin Enterprises</u>, 335 F.3d at 145; <u>Green Party of N.Y. State</u>, 389 F.3d at 418.  Here, the balance of hardships tips decidedly in favor of Defendants..   The Sophin Arbitration has been pending since 2008, having been delayed for

years by disputes among members of the Nasser family concerning who is the beneficial owner of the family's numerous personal holding companies, including Sophin.  There is no reason to believe that a brief additional delay to permit this Court to hear and resolve the discrete question of whether Bonnant agreed to arbitrate these claims will cause undue prejudice to any of the parties to the arbitration.  By contrast, allowing the proceeding to go forward before the Court has made that determination would cause significant hardship to Defendants,, including the very real possibility that they may never be able to pursue their claims against Bonnant.

Further, the Second Circuit has held that arbitration proceedings may be stayed pending a determination of the issue of arbitrability.  See Bensadoun v. Jobe-Riat, 316 F.3d 171 (2d Cir. 2003).  Here, a stay of arbitration is necessary to ensure that all parties, including Bonnant, have a meaningful opportunity to participate and prosecute and defend the various claims and to ensure a full and fair hearing.  As the claims against Bonnant are inextricably intertwined with Sophin's claims against Defendants, Defendants must be given the opportunity to pursue their claims against him in order to resolve completely the dispute among the parties.  Furthermore, a stay of the arbitration will obviate the need for multiple arbitration proceedings, which would involve identical witness, evidence, and proofs.

Ultimately, a stay pending a determination of the arbitrability of the claims against Bonnant would ensure a more efficient, stream-lined resolution of the disputes at  hand.  To find otherwise could result in duplicative proceedings in both federal court and FINRA Dispute Resolution.  Indeed, as detailed supra, if forced to proceed without the claims against Bonnant, Defendants would effectively be left with no remedy against Bonnant, a Swiss citizen who may refuse to appear for a subsequent proceeding before FINRA Dispute Resolution.

Moreover, in the event this Court were to subsequently rule that Bonnant was in fact required to arbitrate, the arbitration award would clearly be subject to vacatur under Section 10(a)(3) of the FAA.  Section 10(a)(3) of the FAA permits an arbitration award to be vacated in an instance where the arbitrators refuse to postpone a hearing upon sufficient cause shown.  9 U.S.C. § 10(a)(3); See Fairfield & Co. v. Richmond, F. & P. R. Co., 516 F. Supp. 1305, 1314 (D.D.C. 1981).  The arbitrary denial of a reasonable request for a postponement may serve as grounds for vacating an arbitration award.  Tube & Steel Corp. of America v. Chicago Carbon Steel Products, 319 F. Supp. 1302 (S.D.N.Y. 1970).  In order for a refusal to constitute misconduct, it "must be without reasonable basis and must operate to the demonstrable prejudice of the party seeking it, factoring in the statute's purpose to promote expeditious resolution of disputes." Gordon Capital Corp. v. Jesup, Josephthal & Co., 1992 U.S. Dist. LEXIS 2101 (S.D.N.Y. 1992) (citing Storey v. Searle Blatt, Ltd., 685 F. Supp. 80, 82 (S.D.N.Y. 1988)).  Given the fact that the issue of whether or not Bonnant -- the primary witness, contact and signatory for the Sophin Account -- must arbitrate is still outstanding, Defendants' request to adjourn the hearing is entirely reasonable.  As such, the Panel's denial of same renders any award subject to vacatur.

As the balance of the hardships tips decidedly in favor of Defendants, this Court should stay the Sophin Arbitration pending the determination of whether Bonnant is required to arbitrate.

## **CONCLUSION**

For the foregoing reasons, Defendants Merrill Lynch, Pierce, Fenner & Smith, Inc. and

Merrill Lynch Capital Services, Inc. respectfully request that this Court stay the Hearing in the

Arbitration pending the Court's decision on whether Bonnant is required to arbitrate the  Third

Party Claim.

Dated: New York, New York
  March 27, 2012      Respectfully submitted,

               BRESSLER AMERY & ROSS, P.C.
               Attorneys   for   Defendants/Third   Party
               Plaintiffs Merrill Lynch, Pierce, Fenner, &
               Smith Inc. and
               Merrill Lynch Capital Services, Inc.


               By: */s/ David J. Libowsky*    
                 David J. Libowsky

24